UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LEROY BURROWS,

                Petitioner,              **DECISION**
                                      **AND ORDER**

   - vs -
                                        02-CV-6314

Victor Herbert, Superintendent, Attica
Correctional Facility,

                Respondent.

_____

**INTRODUCTION**

Petitioner Leroy Burrows ("Burrows") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. §2254 challenging his conviction in Monroe County Court on one count of rape in the first degree and one count of rape in the third degree. For the reasons set forth below, Burrow's §2254 petition is dismissed.

**BACKGROUND**

**I.    Factual Background**

On August 1, 1997, Burrows was charged under Indictment Number 500/97 with one count of first degree rape for the April 7, 1997 rape of Barbara Terry ("Terry"). Under the same indictment, he was also charged with one count of first degree rape of Mahogany Houston ("Houston") between June 24, 1997 and June 25, 1997. Because the victims were less than 17 years of age and Burrows was older than 21 years of age, he was also charged with two counts of rape in the third degree (statutory rape).

1

**The Terry Case**[1]

On April 7, 1997 at around 8:00 p.m., Terry left her aunt's house where she was living at the time to go to the store to get some beer with Burrows and her friend Jason Singleton ("Singleton").[2] T. 253-54. Burrows was driving the car, a blue Honda, while Terry was in the back seat and Singleton was in the front. Id. Upon arriving at the store, Singleton went inside, leaving Terry alone in the car with Burrows. T. 257-258. Rather than waiting for Singleton to return, Burrows drove away. Id. Terry later testified that she began screaming and crying when she realized that something was wrong and Burrows told her to shut up. T. 259. Further, Terry testified that Burrows stopped the car at an unknown location, grabbed her by the throat and again told her to shut up. T.260. Burrows drove a while longer before stopping in a parking lot behind a Ramada Inn near the airport. T. 262. Thereafter, Burrows climbed into the back seat and forcibly removed Terry's clothes. T. 263. She tried to resist but Burrows hit her in the chest and held her down with his elbows. Id. After removing her pants, Burrows allegedly had intercourse with her against her will. T. 265. When Burrows was finished, Terry hit him in the mouth, jumped out of the front window and flagged down a passing motorist. T. 266. The motorist, an elderly lady, brought Terry home. Id. On April 15, 1997, eight days after the incident, Terry informed

---

[1] Citations to "T.___" refer to the trial transcript.

[2] According to Terry, Burrows, who was a friend of her sister's and whom she knew by the name of "Manny Pooh," came to her aunt's house that night with Jason Singleton. T. 124.

her mother what happened and her mother reported to the police that Terry had been raped by Burrows.[3]

**The Houston Case**

On June 24, 1997, two months after Burrows' release from jail, he raped Houston who was then 14 years old. At approximately 9:00 p.m. on the day in question, Houston was outside a friend's house on Scio Street in Rochester when Burrows pulled up in a green Cadillac with his cousin David Hill ("Hill") and another friend previously mentioned, named Singleton. T. 352. Although Hill owned the car, Burrows was driving it. T. 388, T.416.[4] Houston got in the parked car and talked with Burrows for about 15 to 20 minutes. T. 353. At about 9:15 p.m. Houston's cousin, Pam Lawhorn ("Lawhorn") and her boyfriend, pulled up alongside the Cadillac, got out near the window and told Houston to get out of the car. T. 390. As Houston attempted to step out of the car, Burrows drove off in a hurry with Houston still inside. Id. Lawhorn and her boyfriend tried to follow the green Cadillac for a few blocks, but Burrows managed to lose them. T. 392. Burrows then dropped off Singleton at his house on Second Street, and from there Burrows (or Hill, who may have replaced Burrows in the driver's seat when they dropped off Singleton) drove to 80 Norton Street, where Hill's aunt lived. T. 396. Burrows parked in the back

---

[3]On April 16, 1997 Burrows was arrested at his apartment by Officer Michael Burns and taken to the Public Safety Building for booking. T. 330-31. Burrows was charged with rape in the First Degree. However, he was released from jail when Terry failed to appear in court for the preliminary hearing.

[4]Houston had spent several hours with the three individuals earlier in the day and it appears that she may have had consensual sexual intercourse with Burrows earlier that day. T. 416.

of the driveway of 80 Norton Street. T. 356. Hill exited the car and walked across the street to his girl friend's house. T. 357.

Alone in the car with Houston, Burrows climbed into the back seat and asked Houston whether she wanted to have sexual intercourse. Id. Houston answered no and said that she had to leave. Id. However, Burrows would not take no for an answer and he began choking her and insisted that Houston was going to have sexual intercourse with him anyway. T. 357-58. While choking Houston with one hand, Burrows removed her pants with the other and then forced her to have sexual intercourse. T. 359. During the course of the rape, Hill returned to the car and observed that Burrows was having intercourse with Houston. T. 420. Hill later testified that Houston was crying and yelling to him for help. T. 422. Further, Hill testified that Houston told Burrows to get off of her. Id. Burrows ignored Houston's pleas and told Hill to go away. Id. Hill walked back to his girl friend's house but returned to the car a few minutes later and continued to observe Burrows attacking Houston. Id. Although not true, Hill told Burrows that his aunt was coming because he could think of no other way to get Burrows off of Houston, who was yelling for help. T. 423. The ploy worked and as Burrows got off of Houston, Hill entered the driver's seat and assisted Houston in finding her clothes. Id. According to Hill, Burrows expressed anger at him for intervening on behalf of Houston. T. 424.

Hill drove Burrows home and then dropped off Houston on Alphonse Street, where she encountered her cousin Lawhorn. T. 425, T. 428.

When Lawhorn asked why Houston was crying, she explained that Burrows had raped her. T. 473. Thereafter, Houston called her mother and told her what had occurred and her mother contacted the police. Houston was taken by the police to Rochester General Hospital where an examination confirmed that sexual activity took place. T. 483-84. Based on information provided by Houston, the police went to Hill's apartment and searched his green Cadillac. In the back seat of the car, the police found a hair ribbon and a hair brush, both of which belonged to Houston. T. 456-57.[5]

**The Trial and Verdict**

Burrows was tried before a jury in Monroe County Court (Egan, J.) on January 5 to January 8, 1998. Charged with two counts of Rape in the First Degree and two counts of Rape in the Third Degree, Burrows moved to sever counts 1 and 2, which related to Terry from counts 3 and 4, which related to Houston. The court denied the severance motion.[6] The jury convicted Burrows of the Houston rape (counts 3 and 4), but acquitted him of the rape charge involving Terry (counts 1 and 2). Burrows was sentenced on March 23, 1998 to 25 years to life for Rape in the First Degree and 2 to 4 years for Rape

---

[5]On July 3, 1997, Officer John Dimascio responded to a report of a wanted person who was standing on the corner of North Street and Clifford Ave. in Rochester. T. 463. The wanted person was Burrows who was identified by Houston in a photo array as the man who raped her. Officer Dimascio approached Burrows and asked him for his name. According to Officer Dimascio, Burrows initially gave him a false name and incorrect date of birth. Id. Upon further inquiry, Burrows admitted his real identity and correct date of birth. Thereafter, he was placed under arrest and charged with rape.

[6]The court also denied a request by Burrows for an *in camera* hearing to demonstrate that he had "substantial testimony" to give regarding certain unspecified counts and a genuine need to refrain from testifying about others."

in the Third Degree. Both sentences were set to run concurrently.

## II.   **Procedural History**

Burrows appealed his conviction to the Appellate Division of the Fourth Department ("Appellate Division") which unanimously affirmed his conviction in a decision entered March 21, 2001. See People v. Burrows, 280 A.D.2d 132 (4th Dept. 2001). The Appellate Division held that Burrows was not entitled to an *ex parte in camera* hearing on his motion for severance. The Court of Appeals denied leave to appeal on May 15, 2001. On June 11, 2002, Burrows filed the instant federal habeas corpus petition pursuant to 28 U.S.C. §2254 raising the following claims: (1) error in denying his motion to sever; (2) insufficiency of the evidence with regard to Count Three (forcible compulsion claim) and (3) prosecutorial misconduct during closing arguments.[7]

### **DISCUSSION**

## I.   **Standard of Review**

To prevail under 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court

---

[7]As will be discussed further below, Burrows' claim alleging prosecutorial misconduct includes allegations of burden-shifting; denigrating the defense; inflammatory comments; invited response comments; and "modus operandi" comments.

precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. §2254(d)(1),(2); see also Williams v. Taylor, 529 U.S. 362, 375-76 (2000); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir.2003); Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir.2001).

The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." See 28 U.S.C. §2254(e)(1); see also Boyette, 246 F.3d at 88 (quoting §2254(e)(1)) (internal quotation marks omitted). The Second Circuit has provided additional guidance concerning a federal court's application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

See Williams v. Artuz, 237 F.3d 147, 152 (2d Cir.2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir.2000)).

## II.  **Merits of the Petition**

### A.  **Denial of Severance Motion**

On his appeal to the Appellate Division, Burrows argued that the County Court committed reversible error in denying his motion to

sever without conducting an *ex part in camera* hearing (<u>People v. Lane</u>

hearing) pursuant to Criminal Procedure Law ("CPL")

§200.20(3)(b)(ii).[8] He maintains that the denial of severance rendered

his trial fundamentally unfair and deprived him of due process. The

Appellate Division rejected petitioner's claim on the merits, holding

that:

> [T]he defendant made an insufficient showing to warrant
> a hearing pursuant to CPL 200.20(3)(b)(ii) and that the
> court properly denied the severance motion. The two pairs
> of offenses charged in the indictment are joinable
> because they 'are defined by the same or similar
> statutory provisions and consequently are the same or
> similar in law' (CPL §200.20(2)(c)). Defendant moved for
> severance pursuant to CPL §200.20(3), which allows the
> court, in its discretion, to order separate trials of two
> or more offenses or groups of offenses 'in the interest
> of justice and for good cause shown.' ... Even if the
> court had granted the request of defense counsel for an
> ex parte in camera showing with respect to defendant's
> genuine need to refrain from testifying concerning one
> set of charges, the severance motion could not properly
> be granted under CPL 200.20(3)(b) absent a convincing
> showing that defendant also had important testimony to
> give concerning the other set of charges. We conclude,
> therefore, that the court properly denied both the
> request for an ex parte in camera hearing pursuant to CPL
> 200.20(3)(b)(ii) and the severance motion.

<u>Burrows</u>, 280 A.D.2d at 133, 135. Therefore, this court is required to

afford that decision deference under AEDPA.[9]

_____

[8]Burrows moved to sever counts One and Two, which allegedly involved the rape of Barbara Terry in April 1997, from counts Three and Four, which occurred in June 1997 involving the rape of Mahogany Houston.

[9]The Fourth Department relied in part upon <u>People v. Lane</u>, 56 N.Y. 2d 1 (1982), as the basis for its holding. There, the New York Court of Appeals articulated a policy statement directing trial courts to "weigh the public interest in avoiding duplicative, lengthy and expensive trials against the defendant's interest in being protected from unfair disadvantage" <u>See id.</u> at 8, which echoes the balancing of competing interests raised by issue of joinder undertaken by the Supreme Court in <u>Spencer v. Texas</u>, 385 U.S. 554, 562 (1967). The Court of Appeals also noted that before severance may properly be granted, it is necessary "that the defendant make 'a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information-regarding the nature of the

In similar cases, the Second Circuit has noted that under both state and federal law, decisions to sever "are committed to the broad discretion of the trial court, and will be reversed only upon a showing of substantial prejudice." See United States v. Alvarado, 882 F.2d 645, 655 (2d Cir.1989), cert. denied, 493 U.S. 1071 (1990) (direct review of conviction; holding that denial of severance was not erroneous) (quotations omitted); see also Espinal v. Kelly, 1998 WL 655551 at *1 (S.D.N.Y.1998) (citing Alvarado, 882 F.2d at 655) (quotation omitted). Improper joinder does not, in itself, amount to a constitutional violation. See United States v. Lane, 474 U.S. 438, 446 n. 8 (1986). "Joinder of offenses rises to the level of a constitutional violation only if it actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process." See Herring v. Meachum, 11 F.3d 374, 377 (2d Cir.1993) (quoting Tribbitt v. Wainwright, 540 F.2d 840, 841 (5th Cir.1976), cert. denied, 430 U.S. 910 (1977)).

The Second Circuit has recognized that "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively." See Herring, 11 F.3d at 377. However, the Supreme Court "explicitly accepted that '[t]his type of prejudicial effect is acknowledged to inhere in criminal practice,

---

testimony he wishes to give on one count and his reasons for not wishing to testify on the other-to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration"against the defendant's interest in having a free choice with respect to testifying'" See Lane, 56 N.Y.2d at 8-9 quoting Baker v. U.S., 401 F.2d 958, 977, cert. denied 400 U.S. 965.

but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person...in the same trial is a valid governmental interest.'" <u>See</u> <u>id.</u> (quoting <u>Spencer</u>, 385 U.S. at 562); <u>see also</u> <u>United States v. Carpentier</u>, 689 F.2d 21, 27 (2d Cir. 1982) ("A certain amount of prejudice to a defendant is regarded as acceptable given the judicial economies that result from joinder.") Joinder thus "has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." <u>See</u> <u>Herring</u>, 11 F.3d at 377 (citing*, <u>e.g.</u>, <u>Bruton v. United States</u>, 391 U.S. 123, 134 (1968); <u>Zafiro v. United States</u>, 506 U.S. 534, 540 (1993)).

The Second Circuit has observed that habeas petitioners challenging state court convictions under the general "fairness" mandate of the due process clause appropriately "bear an onerous burden" in light of the "significant procedural protection provided by direct review through the state system." <u>See</u> <u>Herring</u>, 11 F.3d at 378 (citing <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 633 (1993) (presumption of finality and legality attaches to state criminal proceedings); <u>TXO Prod. Corp. v. Alliance Resources Corp.</u>, 509 U.S. 457-458 (1993) (plurality opinion) ("Assuming that fair procedures were followed, a judgment that is a product of that process is entitled to a strong presumption of validity")). Therefore, a defendant claiming a due process violation based upon joinder of offenses "must, to succeed, go beyond the potential for prejudice and

prove that *actual* prejudice resulted from the events as they unfolded during the joint trial." See Herring, 11 F.3d at 377-78 (quoting Tribbitt, 540 F.2d at 841 (joinder must "actually" render trial fundamentally unfair before habeas relief is appropriate))

In the instant case, Burrows has not made the required showing that joinder of the counts actually prejudiced his right to a fair proceeding. At his trial, the judge instructed the jury on several occasions that the evidence of one count was not to be used to determine his guilt as to the other counts:

> You've observed that the People have joined in a single indictment, four counts, each charging a separate crime. These crimes are joined in a single indictment solely for the convenience of the Court. Ordinarily, the fact that a defendant is charged with one crime constitutes no proof that the defendant committed another crime also charged in a single indictment. Therefore, you're required to separate in your mind the evidence applicable solely to each crime and return a verdict on each crime based solely on the evidence applicable to that crime.

T. 591. Later, when instructing the jury regarding the elements of the crimes charged in the indictment, the trial judge was careful to reiterate throughout the charge that the jury was required to consider the offenses, and evidence relating to each offense, separately. T. 601-09. The jury was thus properly instructed to refrain from viewing the evidence of the crimes cumulatively during its deliberations. See Herring, 11 F.3d at 378; Zafiro, 506 U.S. at 540-541.

The Court "must presume that the jury followed these instructions "unless there is an 'overwhelming probability' that

the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." See Herring, 11 F.3d at 378 (quoting Greer v. Miller, 483 U.S. 756, 766 n.8 (1987)) (internal quotations omitted). No such "overwhelming probability" of confusion is discernible here. On the contrary, it appears, based on the jury's verdict of acquitting Burrows of counts one and two but convicting him of counts three and four, that the jurors carefully followed the court's admonition to consider each count separately. See id.; see also Davis v. Kelly, 2 F. Supp.2d 362, 366 (W.D.N.Y.1998).

Moreover, the Court finds that the proof, as presented at trial, was such that it was able to be easily considered separate in the minds of the jury. Cf. Herring, 11 F.3d at 378 ("[B]ecause the evidence with respect to each murder was distinct and easily compartmentalized, the risk of jury confusion at petitioner's trial was significantly limited.") (citing, e.g., U.S. v. Chang An-Lo, 851 F.2d 547, 556 (2d Cir.), cert. denied, 488 U.S. 966 (1988)). At Burrows' trial, the evidence consisted of each complainant's testimony about separate occasions on which Burrows allegedly raped Terry and the rape of Houston. The proof was not so complicated that the jury was unable to consider the evidence pertaining to each event separately. Further, the denial of Burrows' severance

application was not an abuse of discretion.[10] The Court finds that the trial court judge was well within constitutional limits in denying the motion to sever and for an *in camera* hearing. Burrows has not demonstrated that he received an unfair trial or suffered compelling prejudice as a result of the denial of severance. The Court finds that the determination of the state court to refuse severance was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent on this issue, and Burrows is not entitled to habeas relief on this ground.

## B.   Sufficiency of the Evidence

Petitioner bears a "very heavy burden" in attempting to obtain a writ of habeas corpus based upon an "insufficiency of the evidence claim." See United States v. Carson, 702 F.2d 351, 361 (2d Cir.1983) (citations omitted), cert. denied, 462 U.S. 1108 (1983); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 811 (2d Cir.2000) (stating that a "petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence"); United States v. Middlemiss, 217 F.3d 112, 117 (2d Cir.2000); United States v. Autuori, 212 F.3d 105, 114 (2d Cir.2000); Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 (2d Cir. 1997) (habeas petitioner "bears a very heavy burden" when challenging the

---

[10]New York courts have consistently held that in determining whether to consolidate offenses for trial, the fact that "a sex crime is involved is not a sufficient basis for the granting of a severance." See People v. Telford, 134 A.D.2d 632, 633 (2d Dept. 1987); see also People v. Rivera; 186 A.D.2d 594, 595 (2d Dept. 1992); People v. Boyea, 222 A.D.2d 937, 939 (3d Dept. 1995); People v. Shand, 280 A.D.2d 943, 943 (4th Dept. 2001).

legal sufficiency of his state criminal conviction). The habeas court's review of the jury's factual findings is limited, and the court may not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."

Under the clearly established law set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), a reviewing court must view the trial evidence in the light most favorable to the prosecution and uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>See Jackson</u>, 443 U.S. at 319 (emphasis in original). The reviewing court is required to defer to the fact-finder's assessment of the strength of the evidence and credibility of the witnesses and may not substitute its view of the evidence for that of the fact-finder. <u>See id.</u>; <u>accord</u>, <u>e.g.</u>, <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir.1996); <u>Middlemiss</u>, 217 F3d at 117.

In evaluating the sufficiency of the evidence to support Burrows' state-court conviction, the Court "'must look to state law to determine the elements of the crime.'" <u>See Ponnapula v. Spitzer</u>, 297 F.3d 172, 179 (2d Cir. 2002) (quoting <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 97 (2d Cir.1999), <u>cert. denied</u>, 528 U.S. 1170 (2000)). Here, Burrows has only challenged the legal sufficiency of the evidence supporting the first degree rape conviction involving Houston. To establish Burrows' guilt of first degree Rape, the prosecution was required to prove beyond a reasonable doubt that, Burrows "engage[d] in sexual intercourse with [Houston] ... [b]y

forcible compulsion". See N.Y.PENAL LAW §130.35. The elements of this crime are as follows: that the defendant, (1) "engage[d] in sexual intercourse" with the victim as defined in CPL §1.30(1); (2) without the victim's consent; and (3) that the lack of consent resulted from the use of forcible compulsion by the defendant as defined in CPL §1.30(8)(a)(b). See N.Y.PENAL LAW §130.35; see also People v. Voymas, 39 A.D.3d 1182, 1183 (4th Dept.2007); People v. Fuller, 50 A.D.3d 1171, 1175 (3d Dept.2008). "Forcible compulsion" is defined as compelling someone by either the use of physical force or "a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person[.]" See N.Y.PENAL LAW §130.00(8)(a)(b); see also People v. Black, 38 A.D.3d 1283, 1285 (4th Dept.2007). Finally, "Sexual intercourse" has been defined as having "its ordinary meaning and occurs upon any penetration, however slight." See N.Y.PENAL LAW §130.00(1).

With regard to the three elements of engaging in sexual intercourse without the victim's consent resulting in the use of forcible compulsion by the defendant, a rational jury easily could have found that the prosecution proved beyond a reasonable doubt that Burrows, engaged in first degree rape of Houston. The testimony of Houston demonstrated that she was alone in the car with Burrows when he climbed into the back seat of the Cadillac and asked her whether she wanted to have sexual intercourse. T. 357. Houston answered no and said that she had to leave. Id. However,

Burrows would not take no for an answer and he began choking her and insisted that Houston was going to have sexual intercourse with him anyway. T. 357-58. While choking Houston with one hand, Burrows removed her pants with the other and then forced her to have sexual intercourse. T. 359. Moreover, during the course of the rape, Hill returned to the car and observed that Burrows was having intercourse with Houston. T. 420.

Hill later testified that Houston was crying and yelling to him for help. T. 422. Further, Hill testified that Houston told Burrows to get off of her. Id. Burrows ignored Houston's pleas and told Hill to go away. Id. Hill walked back to his girl friend's house but returned to the car a few minutes later and continued to see Burrows attacking Houston. Id. Although not true, Hill told Burrows that his aunt was coming because he could think of no other way to get Burrows off of Houston, who was yelling for help. T. 423. The plan worked and as Burrows got off of Houston, Hill entered the driver's seat and assisted Houston in finding her clothes. Id. According to Hill, Burrows expressed anger at him for intervening on behalf of Houston. T. 424. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the jury to infer from Burrows' conduct and the surrounding circumstances that Burrows had engaged in forcible compulsion resulting in first degree rape. Thus, under the Jackson v. Virginia standard, the evidence should be found to be legally sufficient to support Burrows' first degree rape conviction.

Accordingly, Burrows' legal insufficiency claim is denied as without merit. Therefore, Burrows is not entitled to habeas relief based on this ground.

### C. Prosecutorial Misconduct

Burrows asserts that the prosecutor made impermissible comments during summation that were "prejudicial, Inflammatory and grossly improper[.]" See Burrows' Habeas Corpus Petition at 5. As with his first two claims, the Appellate Division rejected this claim on its merits (see Burrows, 280 A.D.2d at 136), and thus the claim is subject to review by this Court under AEDPA, 28 U.S.C. §2254(d). In determining whether a prosecutor's conduct warrants overturning a verdict, "[t]he relevant question," once again, "is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly v. DeChristoforo, 416 U.S. 637 (1974)); see also Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) (To obtain relief based on a claim of prosecutorial misconduct, the habeas petitioner must demonstrate that the "prosecutor [engaged in]...egregious misconduct...amount[ing] to a denial of constitutional due process"). Not only must a prosecutor have exceeded the broad latitude he is afforded, but his comments must have affected the entire proceeding so as to deny the defendant a fair trial. See Darden, 477 U.S. at 181.

"'Inappropriate prosecutorial comments, standing alone, would

17

not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.'" <u>See</u> <u>United States v. Elias</u>, 285 F.2d 183, 190 (2d Cir.2002) (quoting <u>United States v. Young</u>, 470 U.S. 1, 11-12 (1985) and citing <u>United States v. Modica</u>, 663 F.2d 1173, 1184 (2d Cir.1981) ("Reversal is an ill-suited remedy for prosecutorial misconduct[.]")). Rather, in order to warrant reversal, the prosecutor's misconduct must have caused the defendant "substantial prejudice" by "'so infecting the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>See</u> <u>United States v. Shareef</u>, 190 F.3d 71, 78 (2d Cir.1999) (quoting <u>Darden</u>, 477 U.S. at 181; <u>accord</u>, e.g., <u>Elias</u>, 285 F.2d at 190. Thus, the question of whether the defendant was denied a fair trial must be viewed in the context of the entire trial.[11] <u>See</u> <u>Young</u>, 470 U.S. at 11. The relevant context includes whether the prosecutor's comments were invited by defense counsel, <u>id.</u> at 12; whether the comments were in fact improper; and, if they were improper, whether any curative measures were taken to mitigate prejudice or the impropriety was rendered harmless by the likelihood of conviction. <u>See</u> <u>Greer v. Miller</u>, 483 U.S. 756 (1987); <u>see</u> <u>also</u> <u>United States v. Melendez</u>, 57 F.3d 238, 241 (2d Cir.1995).

Here, Burrows complains about a number of comments made by the

---

[11]In determining whether the alleged misconduct amounted to "prejudicial error," courts must review the conduct in the context of the entire trial. See <u>Strouse v. Leonardo</u>, 928 F.2d 548, 557 (2d Cir.1991); <u>Modica</u>, 663 F.2d at 1181 ("The first question is whether the improper comments were minor aberrations in a prolonged trial or cumulative evidence of a proceeding dominated by passion and prejudice.") (internal quotation marks omitted)). In addition to assessing the "severity of the misconduct," the court also must examine "the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." See <u>Elias</u>, 285 F.3d at 191.

prosecutor during summation, which Burrows challenges on various grounds, including that certain of the comments (1) shifted the burden of proof to defendant, (2) denigrated the defense at trial, (3) employed inflammatory rhetoric that improperly appealed to the sympathy of the jury, and (4) improperly commingled evidence in characterizing the strength the inference that could be drawn from evidence that defendant had raped both victims. When viewed in context, however, the prosecutor's comments - alone or in combination - were not so egregious as to render the Appellate Division's decision contrary to, or an unreasonable application of federal law. Indeed, the prosecutor's comments as challenged by Burrows were either not improper or not unduly prejudicial, given the strength of the evidence and the content of the trial court's instructions to the jury.

### 1. Shifting the Burden of Proof

Burrows first complains that the prosecutor shifted the burden of proof at summation when, during discussions about DNA evidence, the prosecutor stated "[t]hey're saying where's the DNA evidence? Has there been any evidence that the defendant is not the individual who committed these crimes?" T. 571. The trial court, however, sustained an objection to these statements. Id. In addition, the court gave a curative instruction concerning the prosecutor's burden-shifting statement. T. 572. Moreover, in its charge, the court instructed the jury that:

    I charge you that in your deliberations you must be

> guided by the cardinal principle that the defendant in
> any criminal action is entitled to the presumption of
> innocence. The defendant is presumed to be innocent of
> the crime charged unless and until guilt has been
> established beyond a reasonable doubt. This presumption
> of innocence belongs to the defendant during the trial.
> It continues during the introduction of evidence upon
> the trial. The summing up of counsel. The charge of the
> Court. And until such time that you, the jury, either
> by your verdict of guilty have said that the
> presumption is overcome, or by your verdict of not
> guilty have said that the presumption has become an
> established fact. Since this presumption of innocence
> continues throughout the trial the burden of proof
> remains on the prosecution at the close of the evidence
> just as it does at the opening. Moreover, this burden
> of proof of guilt beyond a reasonable doubt may never
> be shifted from the People to the defendant.

T. 592. While it is improper for a prosecutor to make remarks suggesting that a defendant has the burden of proving his innocence, <u>United States v. Miller</u>, 79 F.3d 338, 344 (2d Cir.1996), the one remark complained of here, viewed in conjunction with the court's immediate ruling, the court's curative instruction, and the court's full jury instructions, was not sufficiently serious to undermine the fundamental fairness of Burrows' trial.

### 2.   Denigrating the Defense

Burrows also contends that the prosecutor improperly denigrated the defense by telling the jury that defense counsel's resort to pointing out inconsistencies in the witness testimony is "often a defense ploy." T. 573. On this point, the trial court sustained the objection to this statement. <u>Id.</u> Further, the court gave a curative instruction concerning the prosecutor's statement by stating "[y]ou may comment, counsel, on this case but don't

start giving us a lecture about defendants and defense counsel in general." Id. Accordingly, the prosecutor's comments must again be viewed in conjunction with the trial court's rulings and instructions. See Young, 470 U.S. at 11; Greer, 483 U.S. at 766. Here, the trial court sustained an objection to the prosecutor's comment that Burrow's counsel's pointing out inconsistencies in the witness testimony was "often a defense ploy." T. 573. The trial court also gave a curative instruction to the jury. Id. These actions by the court served to minimize any prejudicial impact of the prosecutor's comments. In context, the challenged comments did not violate Burrows' due process rights.

### 3. Employed Inflammatory Rhetoric that improperly appealed to the sympathy of the jury

Burrows complains that the prosecutor made an inflammatory comment that appealed to the sympathy of the jury when the prosecutor remarked that Burrows was "not done preying [sic] on young girls." T. 577. The trial court, on an objection by Burrows' counsel, sustained the objection and directed the jury to disregard the remark made by the prosecutor. Id. Further, during the jury charge the court instructed the jury that "arguments and comments of counsel which you find are not supported by the evidence should receive no consideration from you and you should disregard these arguments. Likewise, the arguments of the attorneys addressed to the Court and in arguing motions or making objection must be disregarded by you. You must disregard any statements of any

21

witnesses which I ordered stricken from the record. If there were answers of witnesses which I excluded or questions by the attorneys which the witnesses were not permitted to answer or any suggestion in your minds of facts not in evidence you must disregard these things." T. 595.

In light of the court's ruling and instructions, it cannot be said that this comment by the prosecutor gave rise to a due process violation. See Johnson v. Ercole, 2007 WL 778478, at *4 (E.D.N.Y.2007) (prosecutor's comments, which allegedly aroused sympathy for the victim, inflamed the emotions of the jury and demonized the petitioner, were "not so egregious as to infect the trial with unfairness"); see also Darden, 477 U.S. at 181 ("it is not enough that the prosecutors' remarks were undesirable or even universally condemned....The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." (quotation marks and citation omitted).

As for Burrows' complaint regarding the prosecutor's so-called inflammatory rhetoric when he commented "Ladies and Gentlemen of the jury, ask yourselves, are these two rapes just bad luck of an individual by the name Leroy Burrows? Are they mere coincidence? I believe this term was used, did lightning strike twice?" (T.584), the prosecutor's remarks appear to have been permissible, when viewed in context. First, Burrows' counsel objected to the remark, but when asked by the trial court on what ground the objection was

made, Burrows' counsel withdrew the objection. Second, the prosecutor's comment was in response to Burrows' counsel's argument that Terry and Houston knew each other and accordingly may have had some connection with Burrows. In addition, Burrow's counsel was challenging the integrity of the victims as well as their credibility. On this point, a review of the transcript reveals that the prosecutor's comments were invited by the comments of Burrows' own counsel during trial. Accordingly, the prosecutor's comment here was permissible under the circumstances presented. See <u>Rosario v. Walsh</u>, 2006 WL 1431410, at *22 (S.D.N.Y.2006) (Report and Recommendation) ("When faced with an attack on prosecution witnesses, a prosecutor may properly respond to that attack and call it a diversionary tactic during summation."(citing cases)), adopted by 2006 WL 1880958 (S.D.N.Y.2006). Thus, the prosecutor's comments was an invited response within the bounds of permissible rhetoric.

### 4. Improperly Commingled Evidence

Petitioner also contends that the prosecutor improperly commingled the evidence and merged the proof for both cases resulting in strengthening the inference that could be drawn that Burrows had raped both victims. Specifically, Burrows argues that the prosecutor improperly informed the jury during summation that "[d]on't forget, I submit to the jury how the rapes occurred in the same fashion. And, again, mere coincidence? Absolutely not. He had a modus operandi. He operated a certain way." T. 584-85. The trial

court, however, sustained an objection to these statements. Id. In addition, the court gave a curative instruction concerning the prosecutor's statement. T. 585. The court instructed the jury that they are "to treat each and every one of these alleged crimes on their own particular merits based on the evidence." Id.

Even assuming that the prosecutor's comments were improper, the trial court took proper steps to cure the misconduct: it sustained defense counsel's objection and immediately directed the jury to disregard the prosecutor's statement and treat the crimes individually. Moreover, the trial court properly gave a specific curative instruction and on several occasions the judge instructed the jury that the evidence of one count was not to be used to determine his guilt as to the other counts. T. 591. Further, during its general charge when instructing the jury regarding the elements of the crimes charged in the indictment, the trial judge was careful to reiterate throughout that the jury was required to consider the offenses, and evidence relating to each offense, separately. T. 601-09.

Burrows has failed to show "substantial prejudice" as a result of the improper comments by the prosecutor. Although the jury convicted Burrows of the Houston rape (counts 3 and 4), they acquitted him of the rape charge involving Terry (counts 1 and 2). To acquit him of one rape and find him guilty of the other rape shows that the jury followed the judge's curative instructions. See King v. Mantello, 2002 WL 32100251, at *14-15 (E.D.N.Y.2002) (any

adverse effect of the prosecutor's speculative comments were remedied by the trial judge's sustaining of counsel's objection and instructions to the jury); see also United States v. Zackson, 12 F.3d 1178, 1183 (2d Cir.1993) (noting that the government generally has "broad latitude in the inferences it may reasonably suggest to the jury during summations" and rejecting prosecutorial misconduct claim on finding that the defendant had suffered no substantial prejudice).

## CONCLUSION

For the foregoing reasons, Leroy Burrows' application for a writ of habeas corpus pursuant to 28 U.S.C. §2254 is denied in its entirety, and the petition is dismissed. Further, because Burrows has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. 28 U.S.C. §2253.

**ALL OF THE ABOVE IS SO ORDERED**

s/Michael A. Telesca
Michael A. Telesca
United States District Judge

DATED:     June 1, 2009
           Rochester, New York